May it please the Court, I'm John Ward. I have a little bit of laryngitis. That's okay. Just pull the mic a little closer and then we'll be able to hear you. Okay. I have a frog in my throat and the Solicitor General apparently he gets it all the time, so it's okay. It's allergies or something, I don't know. I think there are two arguments here. Unless the Court wants to talk about pinholster, I'm certainly glad to go there. But my argument on behalf of Mr. Larimer is twofold. First of all, that the State court's holding that the Doyle error was harmless was unreasonable. And secondly, that Mr. Larimer is entitled to an evidentiary hearing on the issue of whether or not he was deprived of effective assistance of counsel by trial counsel's failure to raise the attorney-client privilege matter in the context of that whole business of was the story scripted and then followed up in final argument by the accusation joined in by the prosecutor that the whole thing was fabricated. And then weaving those together, I think you have a case where the result or the picture that was painted would have been very different had these errors not occurred. So make the case for why it was not harmless. Okay. I mean, this is essentially a continuum of silence, you know, before and after the Miranda warning. And I notice in the transcript the arguments and the questioning, they sort of, it's a seamless questioning. So what's the, ultimately, what's the harm? Well, I think the fact is that nobody made any distinction between pre and post. Right. What they said is, you know, he kept silent for two years, including seven months before the preliminary hearing in which he sat there and went over the record and fabricated. And it seems to me that I think it cuts the other way, the fact that they didn't distinguish between pre and post. That's my answer to that question. And the second point that I'd like to address is the State Court's dismissal of the Doyle error on the grounds that Mr. Larimer's defense was implausible. I mean, when you think about it, that's really not a reasonable statement. Larimer said, and nobody really contradicted him, that he was on his way to pick up his daughter from the hospital. Hardly, you're hardly going to do a drive-by on the way to do that. Secondly, the business of the gun. There was no gun found by the detectives. Therefore, the kids didn't have a gun. Therefore, it's a bunch of fabrication. Well, the fact is that, A, the Attorney General or the prosecutor referred to these kids as liars, that nothing that they said was true. The only reason we have them here is to show that they were victims in this case. And the search that the officer conducted by his own admission was in the areas where the kids told him that they had traveled. So, therefore, I mean, it seems to me certainly not at all implausible that the gun was somewhere else. The final point that the Court of Appeal relies on is the fact that Mr. Larimer's gun wound up in the back seat and not, as he testified, in the front seat. And I don't see how that makes a great deal of material difference in this case. It's quite possible. Who knows what happened? And we have only Larimer's testimony as to what happened in the car, whether the fellow in the back seat took the gun and used it and Holguin in the front seat used the other pistol, the Beretta. So, therefore, it's not at all – were he not savaged by basically two opposing counsel, I think that there's a fair possibility, a reasonable possibility under the Strickland test, even as glossed by Harrington v. Richter, that a more favorable outcome would have resulted. We're following Harrington v. Richter. Sorry I mentioned it. Don't we have to look at counsel's performance to see whether it was objectively unreasonable rather than counsel's subjective state of mind, as you suggested in your brief? Well, we don't know because he raised this – Mr. Larimer raised this claim around attorney-client privilege by way of an original petition in the California Supreme Court. He had previously done the same thing in the Court of Appeal. And he sent trial counsel an accusatory letter accusing him of not knowing the law, of attorney-client privilege, of malpractice, of various other things. And there was no reply to that letter. So we don't know what the objective reasons for this so-called tactical decision were. Is that objectively unreasonable, not to respond to a letter of that nature from a former client who lost? Well, no, but it's evidence of – it's certainly evidence that there's some juice in what – what counsel for Mr. Larimer said. All right. Well, let's assume – let's presume that counsel performed efficiently. How can your client show a reasonable probability that he would have been acquitted? Well, the – allowing this question about was – where you handed a script led directly – it was the predicate for the argument that Mr. Larimer's testimony was fabricated. And absent that testimony – there was no objection to that testimony, by the way. Absent that testimony, absent all that followed from allowing in that question, which was clearly in violation of the attorney-client privilege, I think there's a reasonable probability – not an absolute certainty, but a reasonable probability of acquittal in this case. Okay. You want to save your time? Yeah, I'll save a couple minutes. Thank you very much. Thank you. I'm having knee surgery tomorrow, so I'm a little bit late. It's one of those days. Thank you, Your Honor. That's okay. Take your time. Good morning, Your Honors. May it please the Court. Deputy Attorney General Herb Teddeff on behalf of the appellee. First, with respect to the Doyle error in this case, the district court got it right in finding that any Doyle error was harmless. The standard that we apply here is the Breck standard. And it's significant – very significant to note that Breck, in fact, was a case involving Doyle error. And the United States Supreme Court in Breck found that the Doyle error was harmless. And among the factors that the Supreme Court considered was the factor that the defendant had, prior to the Doyle error, remained silent and not told his story to the police officers and the prosecutor's comments on the pre-Miranda silence were proper. And the Supreme Court found that because there were proper comments on pre-Miranda silence, it essentially rendered the improper post-Miranda comments cumulative. Counsel, one of the problems I have is his credibility was crucial to his case. So how can we find the Doyle error not prejudicial? And shouldn't we remand for an evidentiary hearing to explore whether Mr. Lermo's testimony was scripted? Well, there's, I think, several answers to that question. The first regarding his credibility, we – since he took the stand, yes, his credibility was at issue. But there – we looked to whether or not the error had a substantial and injurious effect or influence. And there are a number of factors why it didn't. For one, the comments on the pre-Miranda silence were properly before the jury and significantly damaged his credibility. Why is that? The comments on the pre-Miranda silence spanned – it's a couple of hours that he was silent, it sounds like, at the scene and then in the – all the way up to the interview in the station. A couple of hours. It was approximately an hour in the police car, 15, 20 minutes on the drive to the police station, and probably three or four hours between booking and being at the police station. So it seems that one inference might be that under the circumstances, a very, of course, incredibly upsetting event, a person might blurt out, you know, I didn't do it, it wasn't my fault, I was surprised, I didn't know those guys were going to open fire. But, you know, for anybody who watches a lot of TV, you know, it may be that the jurors would have expected somebody would – you'd know that you have to remain silent, right, that that's the thing to do, that – I mean, I think a lot of lay people have that impression if you're only talking about a couple of hours as opposed to the comments post-Miranda because that silence spanned seven months and included conversations with his family. Well, I would respond to it in this way. The first – in the record in this case, when Petitioner testified, he stated that he fled from the police because he was looking for a safe place to pull over and tell them what happened. So I think that that contradicts this notion that he just understood his rights and was remaining silent. And on top of it, while that's certainly an inference that one would understand his rights and remain silent, the Supreme Court in Brecht actually discussed the fact that if the shooting was accidental, as the defendant in Brecht had stated, he would have told the police officers because he would have wanted to clear his name, preserve evidence of his innocence. And these are all factors that we would expect. If someone literally had nothing to do with this crime, they would tell the police officers immediately about it. And it stands in stark contrast to the conduct of the victims in this case who immediately went and called 911. That's what an innocent person does. An innocent person doesn't get arrested, put in a police car, is surrounded by police officers for hours and hours and hours and never says, hey, why are you doing this? I'm innocent. I didn't know there was going to be a shooting. Oh, the other guys had a gun. This was all self-defense. You just said hours and hours and hours. Am I misunderstanding the record? Is it not just a couple of hours before he gets to Miranda? Yeah, I'm sorry if I was unclear. It was several hours at the police station. I believe the testimony that he was at the police station for two or three hours before booking, and then he was at the scene for an hour. So perhaps the total time was four hours thereabouts. Thank you. Before he was read his rights. Correct. Correct. But the prosecutor made a big deal out of his not coming forward at any time. That's true. And so are you arguing that there wasn't Doyle error? No. The comments on the post-Miranda silence were Doyle error. I'm simply arguing as. . . I understand you're going to the prejudice side of it, but then if there was Doyle error, and I think counsel appropriately said there wasn't a nice demarcation in the questioning and the arguments, the jury was clearly being impressed by the prosecutor's arguments that this guy never, ever volunteered his side of events. And, you know, four hours in a police station is one thing, but then supposedly after he gets his warning he's supposed to come up with his excuses, his story. Well, I agree. The post-Miranda silence, the comments on that were improper, there's no question. But my argument is that because there were these proper comments on the pre-Miranda silence, they essentially rendered those other comments cumulative. But I'd also like to point out very importantly, I think, is that we can't give short shrift to all the other evidence of guilt here. We have a situation where a petitioner was involved in a gang shooting. He was the driver and owner of the car in which the shooting occurred. He was the owner of the gun that was used. He claimed that the victims had a gun, but no gun was found. He claimed that the reason that they had contacted the victims in this case was because the victims were asking for directions. Yet the ballistic evidence shows that the window was up in the victim's car when the shooting occurred, which refutes the notion that they were discussing about directions when they were driving next to each other. What's more, the deputy in this case who witnessed the shooting said that he saw, he heard shots. He saw the two cars driving parallel. They both slowed down at the same time, and then he heard or he saw more shots. And if this was, in fact, a shooting in self-defense or a surprise shooting, one wouldn't expect that the cars would be driving along parallel and slowing down and having continuing shots. Petitioner presumably would have sped away immediately to avoid the confrontation. What's more, we have petitioner fleeing from the police and essentially not surrendering until he came to a cul-de-sac in a dead end. And his purported reason for fleeing the police really had no weight, because he said that he fled to find a place where he could pull over and tell them what happened. Of course, he never did in this case. What's more, we also have the ballistic evidence that shows that the petitioner's gun was fired from the backseat. And the significance of that is because petitioner offered a fairly detailed account of how the shooting occurred, how his gun wound up in Mr. Holguin's hands and was fired. And if, in fact, his gun was not in Mr. Holguin's hands but was in the backseat, it refutes his rather detailed description of how the shooting came to be. So I think that all of those factors are significant in assessing the any prejudicial nature of the Doyle error in this case. How does Pinholster affect this case? Well, Pinholster affects this case because it states that we first that we look at the State court record in evaluating claims under the ADPA. In other words, what was before the State court? Exactly. What was before the State court? And we defer to the State court's reasonableness findings. And with respect to the claims of ineffective assistance, we look to whether or not they're under Strickland, and whether the State court's rejection of a finding of prejudice and a finding of deficient performance is reasonable. And on top of that, you know, one is not, and I think Pinholster, a fair reading of Pinholster is that you're not tied to an evidentiary hearing until you have met that high threshold of satisfying 2254D. And in this case, regarding the script, there is a plausible reason why counsel may have not objected to the questions. He, the record shows, as I've indicated in my appellate's brief, that he was trying to be forthright with the jury about the fact that he helped Petitioner try and show how all the prosecution witnesses were lying in this case. And he said, you know, we discussed the case, as all attorneys do, and we planned it out because we were trying to establish his innocence. And the fact that counsel may not have responded to a letter from habeas counsel about it does not destroy the presumption that counsel acted reasonably. We presume that counsel had acted, performed effectively. And the fact that he didn't respond to a letter in no way refutes that and in no way, under Pinholster, entitles him to an evidentiary hearing. Unless the Court has any more questions, I will submit. Thank you. Thank you. I'd like to take a couple of minutes. First of all, on Pinholster, I sent a 28-J letter yesterday. I don't know if you received it. But citing Schreiro, which I actually cited in my opening brief, the point is that there is no state court record, and there is no state court record on the attorney-client privilege matter. There's a verified petition and a request for an evidentiary hearing, but no hearing was ever held. And as I read Pinholster, which cites with approval Schreiro, the old Ninth Circuit rules still apply, that if there is no, if you are not given the opportunity, when you diligently seek it, to prove up your case by way of an evidentiary hearing, then the state court's finding is actually entitled to no deference at all. Secondly, on Brecht, I'd like to just talk just for a second about Brecht. The fact is that in Brecht, the shooter, as I recall, shot the man in the back or in the back of the head and then later claimed that he was innocent or something. And that's kind of a far cry from this case. Was Mr. Larimer's story perfect? I don't think so. But was it enough that a jury, if it hadn't been poisoned, could well have believed it? I think so. Finally ---- The problem I have with that is he was with well-known gang members. He was the driver of the car. There was the gun was his that was used in the crime. He fled the scene. And his pre-Miranda silence is arguably very telling. Well, I don't know how ---- I think if you think about the fact that this is gang culture and that this is not a 13-year-old like these boys that are going talking to the police. I think by the time you're 16 or 17 years old in gang culture, you know that it's rarely a good idea, very, very rarely a good idea ever to talk to the police, that it can only lead to woe. And so he may have said on the stand this thing about what I was going to explain. But in the moment back there, given A, the possibility of being dubbed a snitch, and B, the possibility that whatever he said to the police would open the door to great troubles. There is certainly a plausible reason other than fabrication or other than lack of prejudice for him to have kept silent. I think that's about what I have. Thank you very much. Okay. Thank you. Thank you for the arguments, counsel. We appreciate them. The case is submitted. Thank you. Thank you.
judges: Nelson, Fisher, Christen